CLARK, Justice,
concurs in part, dissents in part, and assigns reasons.
_JjI concur with the majority’s affirmance of the award for twenty-four hour custodial/attendant care until March 26, 2012 based on the previous stipulation of the Patient Compensation Fund (“PCF”). I disagree with the award of attorney fees and costs to the plaintiff, however, for the reasons expressed by Justice Guidry.
I further disagree with the majority’s holding that the PCF was required to obtain a judicial ruling modifying the trial court’s March 2006 judgment before it could discontinue prospective payments for custodial/attendant care. In Kelty v. Brumfield, 93-1142 (La.2/25/94), 638 So.2d 1210, this Court’s interpretation of La.Rev. Stat. 40:1299.43 made clear that the legislature had entrusted the PCF with the exclusive responsibility for administering future medical care and related benefits with only limited oversight from the courts. In that case we said:
During the brief history of the future medical benefits program, the responsibility for its administration has been vested in three different agencies, but the basic characteristics of the program have remained the same. First, the claim for such benefits is a special statutory creation inherently different from a general tort law claim for a money judgment for damages. In fact, the program is designed as a remedy, although only a partial, carefully cost-effective one, to the harsh effects of recent changes in medical malpractice tort law. A claimant must meet a special definition of “need” to be entitled to benefits and may receive recompense for actual necessary medical expenses only so long as that need continues. Second, the statute | {¡authorizes a patient in need to file her claim only with the agency vested with the authority to administer the program. Section 1299.43C of the MMA expressly provides:
Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits or a settlement is reached between a patient and the patient’s compensation fund in which the provision of medical care and related benefits is agreed upon and continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient’s compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the health care provider’s malpractice unless the patient refuses to allow them to be furnished.
This feature of the statutory scheme alone clearly indicates that the agency has exclusive jurisdiction of future medical and related care claims, and this meaning becomes even more evident when other aspects of the legislation are taken into consideration. Third, the same agency that is granted the authority to receive and evaluate claims, and to *967 pay, settle or reject them, is also vested with full powers to assure the cost-effectiveness of claims adjustment and the fiscal soundness of the PCF. The agency has the power to require a medical inspection of the need of each claimant for medical care benefits every six months without a court order and more often with a court order. The agency may reduce the payment of claims pro rata below actual cost of medical expenses if the agency determines that the PCF would be exhausted by payment in full of all claims during any semi-annual period. The agency is authorized to apply for and cause to be established appropriate surcharges to be imposed on health care providers and to collect surcharges from self-insured providers.
In establishing the administrative program, the legislature gave statutory jurisdiction to the responsible agency for the purpose of granting, denying, or settling medical and related care services claims. Along with this initial decision-making responsibility the legislature gave clear authority to the agency to supervise the administration of continuing claims. The statutory provisions contemplate that the agency will develop expertise and experience in administering not only future medical care claims but also the moneys from which they are to be paid. The administering agency is required to develop specialized knowledge and assume the responsibility of establishing, and applying for appropriate surcharges to be imposed on health care providers and collecting surcharges from self-insured providers.
Finally, the statutory provisions referring to the courts clearly indicate that they are not vested with original jurisdiction or decision making responsibility over future medical care claims. The courts are authorized to perform two limited functions: (i) certification of whether a malpractice victim is a patient in need, i.e., whether the victim’s damages consumed the cap limits without affording her compensation for all actual medical expenses necessitated by the | .¡malpractice, La.R.S. 40:1299.43A; and (ii) random and ephemeral housekeeping matters, viz., the court is granted a very limited continuing jurisdiction to award attorney fees when the PCF fails to pay timely, id. 43E(2), and order more frequent physical examinations of a patient, upon reasonable cause.
Given the minor, supporting role assigned to the courts, the expertise expected of the agency, the confidence the legislature has placed in the agency, and the active decision-making, administrative, and supervisory roles the agency is required to play, permitting courts throughout the state to conduct their own litigation involving future medical care claims would conflict with and hinder the regulatory scheme rather than supplement or promote its objectives. Indeed, the legislative scheme would be absurd and unworkable if courts were authorized to redetermine de novo reasonable, non-arbitrary decisions made by the agency with respect to the initial disposition of claims, the continuing need of patients for medical care benefits, the fiscal ability of the’ PCF to pay claims in full, the percentage of pro rata reduction of claim payments required to maintain the PCF’s fiscal stability, and the level of surcharges necessary _ to maintain the PCF’s actuarial soundness. Because all of these determinations are . interrelated, the legislature clearly intended to assign the original decision-making function with respect to them to the expert administrative agency. Consequently, we conclude that the legislature intended to eliminate all judicial power in initial decision making or su *968 pervision over medical and related care claims and to vest such exclusive jurisdiction in the agency legislatively assigned to administer the PCF, subject only to court review of the agency’s actions pursuant to well established principles of judicial review.
Kelty, 633 So.2d at 1217-19 [citations omitted]. In light of this Court’s explicit interpretation of La.Rev.Stat. 40:1299.43, I would find the district court lacked the authority to restrict the PCF’s power in administering the benefits program.